**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT O'BRIEN and NICHOLAS MARTIN, Individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No: 10 CV 2991 |
| | ) |
| PIZZA PANINOS, INC. d/b/a PANINO'S PIZZERIA, an Illinois Corporation, and DOES 1-10, | )<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES, AND FOR APPROVAL OF
AN INCENTIVE AWARD TO THE CLASS REPRESENTATIVES**

**I. INTRODUCTION**

This Memorandum will show that Class Counsel in this action is entitled to an award of attorneys' fees and costs in the sum of $35,000 to be paid by the Defendant pursuant to the Settlement Agreement. (See, Settlement Agreement, ¶8). The Settlement Agreement contains the following provisions concerning an award of fees and expenses to Class Counsel:

> 8. **Attorney's Fees and Costs.** Within 30 days after the Effective Date of this Agreement, Defendant shall pay attorney's fees and costs in the lump sum of $35,000 to Class Counsel, subject to Court approval. Defendant agrees not to oppose a request by Class Counsel for approval of attorney's fees and costs in an amount not to exceed $35,000. Class Counsel's attorney's lien shall be automatically released upon receipt of said funds.

(See, Settlement Agreement, ¶8).

## II. THE MONETARY VALUE OF THE SETTLEMENT

The monetary value of the Settlement is substantial. Defendant issued over 60,000 receipts to Class Members in Illinois. Defendant will hold twelve (12) separate Sale Events, during which any person (except employees of Defendant) making a dine-in, carry-out and/or delivery purchase transaction at or from the Defendant's restaurant in Chicago shall receive an automatic discount of ten percent (10%) from the total pre-tax purchase price. This discount is available to anyone, regardless of whether they are a Class Member. There is no cap on the monetary discount, and consumers can take advantage of the Sale Events as many times as they want.

Additionally, as a result of this Lawsuit, Defendant has corrected its systemic computer error that caused its FACTA violations, and the Defendant no longer prints its customer's confidential information on Panino's Pizzeria receipts. This is a substantial benefit to the public at large.

## III. CLASS COUNSEL'S WORK

Plaintiff initially filed this purported class action complaint on May 14, 2010. ("Lawsuit"). Plaintiff sought to certify the following Class:

> All persons to whom the Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after June 3, 2008, which receipt displays the expiration date of the person's credit card or debit card. (the "Settlement Class").

Plaintiff alleges that, on February 27, 2010, Plaintiff received from Defendant at its establishment, a computer-generated cash register receipt which displayed the last four digits of the Plaintiff's credit card number as well as the card's expiration date. Plaintiff further alleges that by printing this information the Defendant willfully violated FACTA.

2

Thereafter, Class Counsel amended the Complaint to add Nicholas Martin as a Plaintiff in this case.

Class Counsel drafted and filed a Motion for Class Certification and Memorandum of Law in Support of its Motion for Class Certification, and reviewed and analyzed Defendant's response to the motion.

Class Counsel obtained the entry of a protective order, engaged in discovery with the Defendant, issued subpoenas to Defendant's credit card processors for third-party discovery, and conducted an investigation relating to the claims and the underlying events and transactions alleged in the Complaint.

Class Counsel has analyzed the evidence and researched the applicable law with respect to the claims of Plaintiffs and the Class against Defendant and the potential defenses thereto.

Class Counsel has conducted discussions and arms-length negotiations with Defendant's Counsel with respect to a compromise and settlement of the Lawsuit, with the goal of settling the issues in dispute and achieving the best relief possible for the Class and entered into the Settlement Agreement.

This settlement was reached after several months of negotiations which are detailed more fully in the parties' Joint Motion for Final Approval of Class Action Settlement, culminating in a settlement conference with the Court where the final settlement terms were reached.

Class Counsel's work has also included bringing the Joint Motion for Preliminary Approval of Class Action Settlement. In addition, Class Counsel expended time and effort in preparing the final approval papers, and should the Court finally approve the settlement, Class Counsel will further expend additional time bringing this matter to conclusion.

## IV. ARGUMENT

Upon approval of the Settlement, Class Counsel will have succeeded in generating a significant monetary and non-monetary benefit of the Class, and there can be no question that he is entitled to reasonable compensation for the result he achieved and the significant risks he assumed. It is respectfully requested that the Court award Class Counsel an attorneys' fee and reimbursement of litigation costs in the agreed-upon total amount of $35,000.

**A.      Standards For Awarding Attorneys' Fees In These Types of Cases.**

It is well-settled that attorneys who achieve a benefit for class members are entitled to be compensated for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Brundidge v. Glendale Federal* Bank, 168 Ill.2d 235, 238 (1995); *see also Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560, 572-73 (2000). Since there was no "common fund" created as part of this settlement, courts generally employ the "lodestar" approach, which entails multiplying the number of hours that the attorneys expended by the attorney's normal hourly rates to create a "lodestar" figure; most often this "lodestar" figure is adjusted upwards by the court to compensate counsel for the contingent nature of the case, the quality of work performed, delay in payment and other factors. *Brundidge,* 168 Ill. 2d at 240-42.

The lodestar method is commonly applied in statutory fee-shifting cases, and it is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation. *In re Prudential Ins. Co. Am. Sales Practice Lit.*, 148 F.3d 283, 333 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).

In this case, no Class Member sustained actual damages as a result of the Defendant's claimed misconduct; thus, each Class Member could only obtain a maximum recovery of $100 pursuant to 15 U.S.C. §1681n(a)(1)(A). It would not be economically feasible to bring a lawsuit for a $100 recovery. However, there is a fee-shifting provision in the statute, so that the Defendant is obligated to pay Class Counsel's attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3).

**B.       Class Counsel Faced Considerable Contingent Risk In Pursuing This Action.**

The small individual stakes involved in these FACTA actions rendered it economically impractical for anyone to pay attorneys on a current, hourly basis to pursue the claims. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis."). From the outset, this action has been prosecuted by Class Counsel on an all "at-risk" contingent fee basis. Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). Class Counsel faced a significant possibility that he would not be successful on the merits or on class certification and, hence, would not be compensated.

A class action was the only realistic avenue available to vindicate the rights of Class members as against the Defendant, as the value of each individual claim would only be worth $100. Given the complex legal basis of this action and the appellate procedures at Defendant's disposal, "victory--even at the trial stage--is not a guarantee of ultimate success." *In re Michael Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).

Thus, Class Counsel risked a tremendous amount of his time and money with the knowledge that it would be <u>lost</u> if the litigation proved unsuccessful.[1] In *In re Washington Public Power Supply System Lit.,* 19 F.3d 1291 (9th Cir. 1994), the Ninth Circuit emphasized that:

> Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. [Citations omitted.] As the court observed in *Behrens v. Wometco Enter., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "[i]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

19 F.3d at 1299-1300.

**C.     Class Counsel's Services, Which Resulted In An Excellent Settlement, Were Of High Quality.**

Class Counsel respectfully submits that he rendered effective representation to the Class in this Lawsuit. Class Counsel was confronted with a significant number of difficult legal and tactical issues throughout the course of this case. The fact that Class Counsel, confronted with these obstacles, was able to secure such settlement relief for the benefit of the Class demonstrates the high quality of his performance. *See In re Equity Funding Corporation of America Sec. Lit.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (the quality of the work "necessarily includes the difficulty of the task performed").

---

1   <u>Unlike</u> Defendant's counsel, who were paid on a non-contingent basis, Class Counsel has thus far received no compensation for his considerable efforts on behalf of the Class. Yet, <u>like</u> Defendant's counsel, Class Counsel had to meet a payroll and pay his rent and other bills on a current basis. It can be accurately observed that while defense counsel are generally paid *per diem*, contingent plaintiff's counsel are paid "perhaps."

6

Class Counsel's standing and experience are similarly relevant in considering the application for counsel fees. *See In re Warner Communications Sec. Lit.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Class Counsel has considerable experience in complex class action litigation in federal and state courts throughout the country. Class Counsel's experience is detailed more fully in the Affidavit of Thomas A. Zimmerman, Jr. which is being filed concurrently with this Memorandum. In the end, the quality of Class Counsel's work is best reflected by the favorable settlement obtained for the benefit of the Class. *See In re Warner Communications Sec. Lit.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985). The settlement relief created by the Settlement for the benefit of the Class is an excellent result in both absolute terms and when balanced against the multitude of risks facing the Plaintiffs and Class Counsel.

D.     **The Reaction of Class Members Favors The Requested Award.**

Courts have recognized that "[t]he lack of objection from members of the class is one of the most important factors" in awarding attorneys' fees." *See In re General Public Utilities Sec. Lit.*, No.79-1420, 1983 WL 22362, *8 (D.N.J. Nov. 16, 1983); *In re Art Materials Antitrust Lit.,* MDL No. 436, 1983 WL 1947, *5 (N.D. Ohio Dec. 27, 1983). In this case, the Class Notice advised that under the Settlement Agreement Class Counsel was authorized to apply for an award of attorneys' fees and costs in the amount of $35,000. Despite the size of the Class – tens of thousands of people – Class Counsel received **no objections** to the terms of the Settlement and **no Class Members opted-out of the settlement.**

E.  **Class Counsel's Fee Petition Is Reasonable and Appropriate Under the Lodestar Method of Calculating Fees**.

The Court should apply a lodestar-with-multiplier approach to calculate attorneys' fees. *Cook v. Neibert*, 142 F.3d 1004, 1012 (7th Cir. 1998); *McLendon v. Continental Group, Inc.*, 872 F.Supp. 142, 164 (D.N.J. 1994); *Bowen v. Southtrust Bank*, 760 F.Supp. 889, 894 (M.D. Ala. 1991). The lodestar is determined initially by multiplying the number of hours counsel reasonably expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). An attorney's hourly rate should be based on the market rate that lawyers of similar ability and experience in the community charge for the types of services rendered. *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996). An attorney's billing rate is presumptively the prevailing market rate for the attorney's services. *People Who Care*, 90 F.3d at 1310.

In contingency fee cases, where there is risk of non-payment, the Seventh Circuit **mandates** the award of a risk multiplier. *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 564 (7th Cir. 1994) ("a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services'" (citations omitted). The need for a risk multiplier is "acute in class action cases." *Florin*, 34 F.3d at 564. In setting a risk multiplier, "[a] court must measure the riskiness of the litigation by measuring the probability of success of this type of case **at the outset** of the litigation." *Id.* (emphasis in original); Cook, 142 F.3d at 1012. The risk multiplier should be higher where, as here, the case is "[a]n uphill fight." *Id.*

As of August 8, 2011, Class Counsel had reasonably expended 148.25 hours on the case and will devote additional hours to the completion of this case. If the services of Class Counsel had been

8

billed at the hourly rate, Class Counsel would be entitled to payment of at least $69,848.75 for his services. Class Counsel has provided the Court with detailed time records and a supporting affidavit, which are attached hereto.

Class Counsel has agreed to accept, and the Defendant has agreed to pay, an award of fees and costs in the amount of $35,000, which equates to a **negative multiple** of approximately **½ times** the lodestar. This is below that which courts commonly apply.

<u>Illinois</u> state and federal courts have consistently allowed multipliers in excess of that requested here. See: *Hoffman v. First National Bank,* Case No. 88 CH 4462 (Judge Green) (1990) (multiplier of 4.0); *In re Cenco, Inc. Sec. Litig*., 519 F. Supp. 322, 326-27 (N.D. Ill. 1981) (awarding multiplier of 4.0); *Arenson v. Board of Trade of City of Chicago,* 372 F. Supp. 1349, 1359 (N.D. Ill. 1974) (awarding multiplier of 4.0); *Board of Educ. of Aptakisic-Tripp School Dist. No. 102 v. Lake County,* 156 Ill.App.3d 1064, 1076 (2nd Dist.1987) (multiplier of 3.0); *Fiorito v. Jones,* 72 Ill.2d 73, 93 (1978) (multiplier up to 3.0 times); *Kozak v. Retirement Bd. of Firemen's Annuity & Benefit Fund of Chicago,* Case No. 80 CH 21311 (Cook County Circuit Court) (multiplier of 3.0); *Sampson v. Eastman Kodak Co.,* 195 Ill.App.3d 715 (1st Dist. 1990) (multiplier of 3.0); *Baksinski v. Corey,* Case No. 83 CH 6712 (Cook County Circuit Court) (multiplier of 3.0); *Bolnick v. Allstate Ins. Co.,* 72 CH 7443 (Cook County Circuit court) (multiplier of 3.0); *Brooks Midas Int'l Corp.,* No. 4061 (Cook County Circuit Court) (multiplier of 3.0); and *Coordinating Comm. of Mechanical Specialty Contractors v. O'Connor,* No. 79 L 18504 (Cook County Circuit Court) (multiplier of 3.0).

Additionally, courts throughout the <u>nation</u> have consistently allowed multipliers in excess of that requested here. See: *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479-480 (Cal. App. 1984) (multiplier of 12.0); *Weiss v. Mercedes-Benz of North America,*

9

*Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (multiplier of 9.0); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (multiplier of 8.9); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (multiplier of 8.74); *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (6.0 times multiplier); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138 (S.D.N.Y. 1992) (awarding fee resulting in multiplier of 6.0 times the lodestar); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 197 (S.D.N.Y. 1997) (5.5 multiplier); *Ramos v. Philip Morris Cos.*, Inc., 743 So.2d 24, 32-33 (Fla. App. 1999) (multiplier of 5.0); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915, 924 (E.D. Ky. 1986) (awarding multipliers of up to 5.0); *In re Equity Funding Corp. of America Securities Litigation*, 438 F. Supp. 1303, 1334 (C.D. Cal. 1977) ("A review of prior judicial precedent discloses the use of multipliers up to 5.0 times the normal hourly rates charged."); *Municipal Authority of Town of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982, 993 (M.D. Pa. 1981) (awarding multiplier of 4.5); *In re Corrugated Container Antitrust Litigation*, 1983-2 Trade Cas. P 65,628, 1983 WL 1872 (S.D. Tex. 1983) (awarding multipliers of up to 4.0; noting that case law supports use of multipliers of as much as 5.0 times the lodestar); *Rabin v. Concord Assets Group, Inc.*, Fed. Sec. L. Rep. P 96,471, at 92,081, 1991 WL 275757 (S.D.N.Y. 1991) (awarding a multiplier of 4.4, and noting "in recent years multipliers of between 3.0 and 4.5 have been common"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D.534, 549 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990) (awarding a multiplier of 3.0, and noting "the range of lodestar multipliers in class actions run from a low of 2.26 to a high of 4.5"); *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, *33 (W.D. Tex. 1996) (court awarded multiplier of 4.0 to lead counsel and 3.25 to other attorneys, and noted that "[t]he range of multipliers in class actions have ranged from 2.26 to 4.5"); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approved fee

equaling a multiplier of 3.97); *Goldenberg v. Marriott PLP Corp.*, 33 F.Supp. 2d 434, 439 n. 6 (D. Md. 1998) (approving fee which equaled a multiplier of 3.6, and noting that this is "well-within the average range of 3.0 to 4.5"); *In re Shell Oil Refinery*, 155 F.R.D. 552, 574 (E.D. La. 1993) (multiplier of 3.25); *Pacific Plumbing Supply Co. v. Crane Co.*, 1982-1 Trade Cas. P 64,473, 1982 WL 1794, at *2 (W.D. Wash. 1982) (awarding multiplier of 3.0); *O'Rourke v. Healthdyne, Inc.*, 1986 WL 923, at *2 (E.D. Pa. 1986) (multiplier of 3.0).

There is no reasonable basis to object to Class Counsel's award of fees with a **negative multiplier of 50%**, as requested herein.

F.  **The Proposed Incentive Award to the Named Plaintiffs is Reasonable and Should Be Allowed.**

Under the Settlement Agreement, as an incentive award to the Plaintiffs for their participation as the Class Representative herein, Defendant has agreed to pay an incentive award to the Plaintiffs in the sum of $2,000 each. (See, Settlement Agreement at ¶ 7(a)).

In Illinois, the First District, affirming an incentive award to a class representative, acknowledged that incentive awards to representative parties are not atypical in class actions and, in fact, "serve to encourage the filing of class actions suits." *GMAC Mortg. Corp. of Pa.,* 236 Ill.App.3d at 497. *See also*, *Ryan v. City of Chicago,* 274 Ill.App.3d 913, 926 (1st Dist.1995) (affirming trial court's incentive award of $10,000 each to two plaintiffs).

The Seventh Circuit, in affirming a $25,000 incentive award to a class representative, held: "[A] named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998).

Additionally, numerous courts throughout the country have recognized the importance of incentive awards for class representatives in many cases. *See, e.g.*, *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D.Ohio 1990) (court approved two incentive awards of $55,000 and three of $35,000 to five representative plaintiffs); *In re SmithKline Beckman Corp. Securities Litigation*, 751 F.Supp. 525, 535 (E.D.Pa.1990) (court approved award of $5,000 to each of several representative plaintiffs); *In re First Jersey Securities, Inc. Litigation*, 1989 WL 69901 * 7 (E.D.Pa. June 23, 1989) (court approved award of $25,000 to representative plaintiff); *Golden v. Shulman*, 1988 WL 144718*8 (E.D.N.Y. Sept. 30,1988) (court approved award of $5,000 to representative plaintiff in securities class action); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 32 (E.D.Pa.1985) (court approved an award of $20,000 to each of two representative plaintiffs in antitrust case); *Basile v. Merrill Lynch, P.F. & S.*, 640 F.Supp. 697, 702 (S.D.Ohio 1986) (court awarded $948,000 separate cash award for representative plaintiffs and intervening plaintiffs).

There is substantial reported authority for such awards to class representatives who bring actions which vindicate the rights of a class of similarly situated persons. In *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) the Court observed that incentive awards are "routine:" "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." In *Wood v. Coca-Cola Company,* 200 F.R.D 685, 694 (N.D. Ga. 2001), the Court evaluated the incentive awards by looking at the overall benefits of the settlement. *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 (S.D. Ohio 1991) (courts consider "whether these actions [by the Class Representatives] resulted in a substantial benefit to Class Members"); and *Huguley v. General Motors Corp.,* 128 F.R.D. 81, 85 (E.D.Mich.

1989), aff'd 925 F.2d 1464 (6th Cir. 1991), *cert. den. sub nom., Dodson v. General Motors Corp.,* 502 U.S. 909 (1991) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne").

The Plaintiffs actively participated in the Lawsuit, and they both attended the settlement conference with the Court. In the light of the overwhelming precedent, the proposed incentive award to the Plaintiffs is reasonable and should be allowed.

## V. CONCLUSION

Accordingly, for the foregoing reasons, Class Counsel respectfully requests that the Court award Class Counsel attorneys' fees and costs in the agreed-upon amount of $35,000, approve the $2,000 incentive award to each Plaintiff, and for any other relief the Court deems just under the circumstances.

          Respectfully submitted,

          s/ Thomas A. Zimmerman, Jr.
          Thomas A. Zimmerman, Jr. (#6231944)
          Adam M. Tamburelli
          ZIMMERMAN LAW OFFICES, P.C.
          77 West Washington Street
          Suite 1220
          Chicago, Illinois 60602
          (312) 440-0020

Counsel for the Plaintiffs and Class