# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2991 | **DATE** | 8/16/2011 |
| **CASE TITLE** | O'Brien et al. vs. Panino's, Inc. | | |

**DOCKET ENTRY TEXT**

Motion hearing held on final approval of class action settlement. Defendant's joint motion for final approval of settlement agreement [61] is granted. Plaintiffs' counsel's motion for attorneys' fees and approval of class representative incentive awards [64] is granted as to the incentive awards of $2,000 to each of the named plaintiffs, but reserved as to the issue of attorneys' fees, for the reasons set out below. Motion hearing on plaintiff's revised motion for attorney fees set for 9/13/11 at 10:00 a.m. Enter Judgment and Order Granting Final Approval of Settlement.

■[ For further details see text below.]     Notices mailed by Judicial staff.

00:30

## STATEMENT

In settling this class action under the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C §1681c(g)(1), defendant agreed to pay plaintiffs' counsel $35,000 for attorneys' fees and costs. This court presided at the settlement conference and is aware that defendant was represented by able counsel who negotiated at arms' length to reach a settlement with plaintiffs and their counsel.

If that were all there was to it, there would be no question about the amount of attorneys' fees for plaintiffs' counsel. But under Federal Rule of Civil Procedure 23(h), the court has a responsibility to review, and not just rubber stamp, any fees awarded to class counsel. The Advisory Committee comments to Rule 23(h) make that point.

> Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process. . . . In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility. . . . The agreement of a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration, but the court remains responsible to determine a reasonable fee.

Fed. R. Civ. P. 23 advisory comm. nn (2003).

In this case, after reviewing plaintiffs' application for attorneys' fees, the court has some reservations about whether $35,000 is a reasonable fee to award in this case.

Defendant's agreement to pay plaintiffs' attorneys' fees here was in settlement of plaintiffs' claim under the fee-shifting provision in FACTA, 15 U.S.C. § 1681n(a)(1)(A)(3). Accordingly, we start with the

**STATEMENT**

lodestar. Plaintiffs' counsel states that the lodestar calculation here (reasonable hourly rates multiplied by time expended) would total $69,848.75. (Pls.' Mem. Mot., Ex. 1, Zimmerman Aff. ¶ 5.) [Dkt 65.] Plaintiffs' memorandum, citing *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 564 (7th Cir. 1994), argues that in a contingent fee case, the Seventh Circuit mandates the award of a "risk multiplier" to enhance the lodestar amount. Thus, plaintiffs argue, by requesting $35,000, their counsel has applied a "negative multiplier," in effect, foregoing some additional bonus to which they would otherwise be entitled.

However, in the *Florin* case, the claim for statutory fee-shifting was settled by an agreement that plaintiffs' attorneys' fees would be paid from the common fund created by the settlement. Here, no common fund was created. This case is a straight application of the fee-shifting statute, and plaintiffs seek an award to be paid by defendant independent of the class relief. As the Seventh Circuit observed in the *Florin* case, the Supreme Court has held that in statutory fee-shifting cases, the court may not enhance the fee award above the lodestar amount to reflect risk of loss or contingency. *Florin*, 34 F.3d at 564 (citing *City of Burlington v. Dague,* 505 U.S. 557 (1992)). Last year, the Supreme Court again reiterated that in statutory fee-shifting situations, the lodestar calculation may be enhanced only in rare and exceptional circumstances. *Perdue v. Kenny A.,* ____ U.S. ___, 130 S. Ct. 1662 (2010).

Thus, plaintiffs' counsel's request for $35,000 does not reflect the foregoing of a "risk multiplier," because none could be applied in this case.

More importantly, reviewing plaintiffs' counsel's billing records, attached as Exhibit 1 to the application, raises questions about the components of the lodestar.

The billing records show just under $70,000 in fees for 148.25 hours of time, all of which was billed by "TAZ" and "AMT." Although it is not expressly stated in the application, the court concludes that this represents time by attorney Thomas A. Zimmerman at a rate of $500 per hour and attorney Adam M. Tamburelli at rate of $400. There is nothing in the application or materials to demonstrate that those are "market rates" as required in a lodestar calculation, although Mr. Zimmerman's resume is attached and the court is aware that he is a lead plaintiff's counsel in a significant number of consumer cases. It is not impossible that $500 is a reasonable rate for a counsel with Mr. Zimmerman's experience. But to award fees in a FACTA case, there must be evidence that the attorney's rates are the market rate for lawyers of that experience in that area of law. *See Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 660 (7th Cir. 2007).

Even assuming, however, that those rates are reasonable for experienced counsel, such high rates can be applied only to work that reasonably requires counsel of that experience. Plaintiffs' records reflect no work by associates or paralegals billing at a lower rate. The Seventh Circuit has made clear that the court cannot award fees at attorneys' rates for work that does not require that level of skill. *See, e.g., Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). In *Spegon*, the Seventh Circuit said that no fees, not even at paralegal rates, should be allowed for time spent on clerical or secretarial tasks, which should be absorbed as overhead into the attorneys' billing rate. In the present case, even the most ministerial tasks are billed out at $500 per hour. For example, "draft summons for defendant" and "draft civil cover sheet" were billed at one-quarter hour each at $500 per hour. Mr. Zimmerman charged $375, representing three-quarters of an hour at $500, *for electronically filing* the previously-drafted complaint, the attorney appearances and the civil cover sheet, along with sending an e-mail to the clerk and setting summons to issue. The court has serious doubts whether any paying client would accept that.

As another example, $1,425 in fees were incurred to draft and file an unopposed, one-page motion to file documents under seal. Again, it is questionable whether this reflects the "billing judgment" that counsel

**STATEMENT**

is required to apply to applications for attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Part of the problem stems from counsel's practice of billing on the basis of quarter hours rather than tenths of an hour. That results in entries where, for example, Mr. Zimmerman spent 15 minutes reviewing the client's receipt. Although some judges have frowned on the practice of billing on a minimum quarter hour basis, most courts have concluded that it is not *per se* unreasonable, assuming that it reflects the firm's standard practice that is accepted by and applied to paying clients, and does not result in inflated or "padded" time entries. *See, e.g., Garcia v. R.J.B. Properties, Inc.*, 756 F. Supp. 2d 911, 918-19 (N.D. Ill. 2010) (collecting cases). In this case, however, there are entries such as "draft notice of filing" and "draft notice of motion" that are billed for a quarter hour each at $500 per hour. It should not take an attorney with enough experience to justify a $500 billing rate a quarter of an hour to fill out a notice of filing, putting aside the question of whether such a simple task should be done at such a rate at all. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948-49 (9th Cir. 2007) (reducing fees billed at quarter hour for phone calls and e-mails).

Another issue is the amount of time identified for legal research. This is a garden-variety FACTA case, with a six-page initial complaint with standard allegations. Plaintiffs' counsel represents that he has extensive experience in this area of law, so as to justify a high billing rate. The application fails to explain why plaintiffs' counsel needed to spend 5 ½ hours ($2,750) reviewing the law regarding FACTA in the initial stages of the case before defendant even filed an answer.

The $35,000 proposed attorneys' fee award is a substantial discount from the total fee amount reflected in plaintiffs' counsel's billing records. However, that alone does not demonstrate that it is a reasonable award because the lodestar from which it starts is not calculated in a way consistent with established case law. The fact that defendant agreed to $35,000 is a point in its favor, but it is not enough.

While the court, like the parties, would like this case to come to a close, the court has a clear responsibility under Rule 23 to make a judgment about attorneys' fees. After careful review of the application, the court concludes it cannot do so on the basis of the current submissions. Accordingly, plaintiffs' counsel may submit a revised application to support their request for an award of $35,000 using the standards required in fee-shifting cases to demonstrate that such an award is reasonable.