**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT O'BRIEN and NICHOLAS MARTIN, Individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No: 10 CV 2991 |
| PIZZA PANINOS, INC. d/b/a PANINO'S PIZZERIA, an Illinois Corporation, and DOES 1-10, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
CLASS COUNSEL'S AMENDED APPLICATION FOR AN AWARD
OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**I. INTRODUCTION**

This Memorandum will show that Class Counsel in this action is entitled to an award of attorneys' fees and costs in the sum of $35,000 to be paid by the Defendant pursuant to the Settlement Agreement. (See, Settlement Agreement, ¶8). The Settlement Agreement contains the following provisions concerning an award of fees and expenses to Class Counsel:

8. **Attorney's Fees and Costs.** Within 30 days after the Effective Date of this Agreement, Defendant shall pay attorney's fees and costs in the lump sum of $35,000 to Class Counsel, subject to Court approval. Defendant agrees not to oppose a request by Class Counsel for approval of attorney's fees and costs in an amount not to exceed $35,000. Class Counsel's attorney's lien shall be automatically released upon receipt of said funds.

(See, Settlement Agreement, ¶8).

## II. THE MONETARY VALUE OF THE SETTLEMENT

The monetary value of the Settlement is substantial. Defendant issued over 60,000 receipts to Class Members in Illinois. Defendant will hold twelve (12) separate Sale Events, during which any person (except employees of Defendant) making a dine-in, carry-out and/or delivery purchase transaction at or from the Defendant's restaurant in Chicago shall receive an automatic discount of ten percent (10%) from the total pre-tax purchase price. This discount is available to anyone, regardless of whether they are a Class Member. There is no cap on the monetary discount, and consumers can take advantage of the Sale Events as many times as they want.

Additionally, as a result of this Lawsuit, Defendant has corrected its systemic computer error that caused its FACTA violations, and the Defendant no longer prints its customer's confidential information on Panino's Pizzeria receipts. This is a substantial benefit to the public at large.

## III. CLASS COUNSEL'S WORK

### A. Initial Stages of the Case.

Plaintiff initially filed this purported class action complaint on May 14, 2010. ("Lawsuit"). Plaintiff sought to certify the following Class:

> All persons to whom the Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after June 3, 2008, which receipt displays the expiration date of the person's credit card or debit card. (the "Settlement Class").

Plaintiff alleges that, on February 27, 2010, Plaintiff received from Defendant at its establishment, a computer-generated cash register receipt which displayed the last four digits of the Plaintiff's credit card number as well as the card's expiration date. Plaintiff further alleges that by printing this information the Defendant willfully violated FACTA.

Thereafter, Class Counsel amended the Complaint to add Nicholas Martin as a Plaintiff in this case.

Class Counsel drafted and filed a Motion for Class Certification and Memorandum of Law in Support of its Motion for Class Certification, and reviewed and analyzed Defendant's response to the motion.

Class Counsel obtained the entry of a protective order, engaged in discovery with the Defendant, issued subpoenas to Defendant's credit card processors for third-party discovery, and conducted an investigation relating to the claims and the underlying events and transactions alleged in the Complaint.

### B. Legal Research.

Class Counsel has analyzed the evidence and researched the applicable law with respect to the claims of Plaintiffs and the Class against Defendant and the potential defenses thereto.

Extensive legal research in this case was necessary. FACTA is an evolving law, and new decisions are regularly issued by Courts around the country interpreting its provisions. Additionally, the law is applied inconsistently around the country.

For example, Plaintiff and the Class were only seeking statutory damages for Defendant's violations of FACTA. 15 U.S.C. § 1681n(a)(1)(A) provides for statutory damages only if a defendant's violations are "willful." The willfulness requirement of § 1681n is defined to include both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57 (2007). In *Safeco*, the Supreme Court interpreted "recklessness" in keeping with the common law definition of action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. at 68. However, no case in the nation provides bright line rules as to what

constitutes "wilful" conduct in a FACTA case, despite the fact that these issues are regularly litigated. Indeed, at the settlement conference in this matter, this Court recognized the lack of clarity on this issue. Therefore, Class Counsel is required to regularly perform nationwide research to monitor Court rulings on the "willfulness" issue.

Additionally, pursuant to 15 U.S.C. § 1681n(a)(1)(A), the statutory damages that a jury can award ranges from $100 to $1,000 per consumer, plus attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) and §1681o(a)(2). In this case, that means that a verdict could range from approximately $6,000,000 to $60,000,000. However, a verdict of that amount could raise issues regarding constitutional due process violations. In fact, though Courts have repeatedly rejected attacks on the constitutionality of FACTA based upon the possibility of excessive damages, the statue continues to be attacked on this basis. See, *e.g.*, *Armes v. Sogro, Inc.*, 2011 WL 1197537, *7-8 (E.D. Wis. Mar. 29, 2011) (discussing history of constitutional attacks on FACTA).

Additionally, large potential verdicts in FACTA cases have raised class certification issues as well, as some Courts initially determined that FACTA cases do not meet the superiority requirement of Fed. R. Civ. P. 23 because class-wide damages would be too great. See, *e.g.*, *Bateman v. Am. Multi-Cinema, Inc.*, 252 F.R.D. 647 (C.D. Cal. 2008) rev'd and remanded, 623 F.3d 708 (9th Cir. 2010); *Stillmock v. Weis Markets, Inc.*, 2009 WL 595642 (D. Md. Mar. 5, 2009) *vacated,* 385 F. App'x. 267 (4th Cir. 2010). Although these decisions were reversed, many of these cases were making their way through the appeal process during the pendency of this case.

In addition to the foregoing myriad potential problems, Class Counsel has had to conduct continuous legal research regarding insurance coverage issues in order to determine whether

4

Defendant's insurance policy provided coverage for the claims.[1] Insurance coverage would negate potential problems with the superiority requirement of Fed. R. Civ. P. 23, as the damages would not be destructive to Defendant's business. Furthermore, despite the fact that these insurance issues are prevalent in FACTA litigation, the cases conflict as to whether FACTA violations constitute "advertising injuries" under commercial general liability policies. See, *e.g.*, *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co.*, 581 F.Supp.2d 677 (W.D. Pa. 2008) (holding that there is no insurance coverage); *Creative Hospitality Ventures, Inc. v. U.S. Liability Ins. Co.*, 655 F.Supp.2d 1316 (S.D. Fla. 2009) (holding that there is insurance coverage). Indeed, cases addressing these issues are working their way through the courts of appeal now, and Class Counsel has been not only monitoring them, but continually performing nationwide legal research in order to determine the trends in this area of law.

Accordingly, prior to instituting this case, Class Counsel was required to conduct extensive nationwide legal research both on Plaintiffs' individual claims as well as on class certification issues, as the Complaint and Motion for Class Certification had to be filed together at the beginning of the case to prevent Defendant from "picking off" the plaintiffs and rendering Plaintiffs' claims moot. See, *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).

### C. Settlement.

Class Counsel has conducted discussions and arms-length negotiations with Defendant's Counsel with respect to a compromise and settlement of the Lawsuit, with the goal of settling the issues in dispute and achieving the best relief possible for the Class and entered into the Settlement Agreement.

---

[1] Defendant's insurer provided the defense under a reservation of rights.

This settlement was reached after several months of negotiations which are detailed more fully in the parties' Joint Motion for Final Approval of Class Action Settlement, culminating in a settlement conference with the Court where the final settlement terms were reached.

Class Counsel's work has also included bringing the Joint Motion for Preliminary Approval of Class Action Settlement. In addition, Class Counsel expended time and effort in preparing the final approval papers, and appearing in Court to obtain final approval of the settlement. Class Counsel will further expend additional time bringing this matter to conclusion.

## IV. ARGUMENT

Upon approval of the Settlement, Class Counsel will have succeeded in generating a significant monetary and non-monetary benefit of the Class, and there can be no question that he is entitled to reasonable compensation for the result he achieved and the significant risks he assumed. It is respectfully requested that the Court award Class Counsel an attorneys' fee and reimbursement of litigation costs in the agreed-upon total amount of $35,000.

### A. Standards For Awarding Attorneys' Fees In These Types of Cases.

It is well-settled that attorneys who achieve a benefit for class members are entitled to be compensated for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Brundidge v. Glendale Federal* Bank, 168 Ill.2d 235, 238 (1995); *see also Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560, 572-73 (2000). Since there was no "common fund" created as part of this settlement, courts generally employ the "lodestar" approach, which entails multiplying the number of hours that the attorneys expended by the attorney's normal hourly rates to create a "lodestar" figure; most often this "lodestar" figure is adjusted upwards by the court to compensate counsel for

6

the contingent nature of the case, the quality of work performed, delay in payment and other factors. *Brundidge,* 168 Ill. 2d at 240-42.

The lodestar method is commonly applied in statutory fee-shifting cases, and it is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation. *In re Prudential Ins. Co. Am. Sales Practice Lit.*, 148 F.3d 283, 333 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).

In this case, no Class Member sustained actual damages as a result of the Defendant's claimed misconduct; thus, each Class Member could only obtain a maximum recovery of $100 pursuant to 15 U.S.C. §1681n(a)(1)(A). It would not be economically feasible to bring a lawsuit for a $100 recovery. However, there is a fee-shifting provision in the statute, so that the Defendant is obligated to pay Class Counsel's attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3).

**B.     Class Counsel Faced Considerable Contingent Risk In Pursuing This Action.**

The small individual stakes involved in these FACTA actions rendered it economically impractical for anyone to pay attorneys on a current, hourly basis to pursue the claims. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis."). From the outset, this action has been prosecuted by Class Counsel on an all "at-risk" contingent fee basis. Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361,

363 (7th Cir. 1998). Class Counsel faced a significant possibility that he would not be successful on the merits or on class certification and, hence, would not be compensated.

A class action was the only realistic avenue available to vindicate the rights of Class members as against the Defendant, as the value of each individual claim would only be worth $100. Given the complex legal basis of this action and the appellate procedures at Defendant's disposal, "victory--even at the trial stage--is not a guarantee of ultimate success." *In re Michael Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).

Thus, Class Counsel risked a tremendous amount of his time and money with the knowledge that it would be lost if the litigation proved unsuccessful.[2] In *In re Washington Public Power Supply System Lit.,* 19 F.3d 1291 (9th Cir. 1994), the Ninth Circuit emphasized that:

> Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. [Citations omitted.] As the court observed in *Behrens v. Wometco Enter., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "[i]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

19 F.3d at 1299-1300.

### C. Class Counsel's Services, Which Resulted In An Excellent Settlement, Were Of High Quality.

Class Counsel respectfully submits that he rendered effective representation to the Class in this Lawsuit. Class Counsel was confronted with a significant number of difficult legal and tactical issues throughout the course of this case. The fact that Class Counsel, confronted with these

---

[2] Unlike Defendant's counsel, who were paid on a non-contingent basis, Class Counsel has thus far received no compensation for his considerable efforts on behalf of the Class. Yet, like Defendant's counsel, Class Counsel had to meet a payroll and pay his rent and other bills on a current basis. It can be accurately observed that while defense counsel are generally paid *per diem*, contingent plaintiff's counsel are paid "perhaps."

8

obstacles, was able to secure such settlement relief for the benefit of the Class demonstrates the high quality of his performance. *See In re Equity Funding Corporation of America Sec. Lit.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (the quality of the work "necessarily includes the difficulty of the task performed").

Class Counsel's standing and experience are similarly relevant in considering the application for counsel fees. *See In re Warner Communications Sec. Lit.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Class Counsel has considerable experience in complex class action litigation in federal and state courts throughout the country. Class Counsel's experience is detailed more fully in the Affidavit of Thomas A. Zimmerman, Jr. which is being filed concurrently with this Memorandum. In the end, the quality of Class Counsel's work is best reflected by the favorable settlement obtained for the benefit of the Class. *See In re Warner Communications Sec. Lit.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985). The settlement relief created by the Settlement for the benefit of the Class is an excellent result in both absolute terms and when balanced against the multitude of risks facing the Plaintiffs and Class Counsel.

### D. The Reaction of Class Members Favors The Requested Award.

Courts have recognized that "[t]he lack of objection from members of the class is one of the most important factors" in awarding attorneys' fees." *See In re General Public Utilities Sec. Lit.*, No.79-1420, 1983 WL 22362, *8 (D.N.J. Nov. 16, 1983); *In re Art Materials Antitrust Lit.,* MDL No. 436, 1983 WL 1947, *5 (N.D. Ohio Dec. 27, 1983). In this case, the Class Notice advised that under the Settlement Agreement Class Counsel was authorized to apply for an award of attorneys' fees and costs in the amount of $35,000. Despite the size of the Class – tens of thousands of people

9

– Class Counsel received **no objections** to the terms of the Settlement and **no Class Members opted-out of the settlement.**

      E.      **Class Counsel's Fee Petition Is Reasonable and Appropriate Under the Lodestar Method of Calculating Fees**.

The Court should apply a lodestar approach to calculate attorneys' fees. *Cook v. Neibert*, 142 F.3d 1004, 1012 (7th Cir. 1998); *McLendon v. Continental Group, Inc.*, 872 F.Supp. 142, 164 (D.N.J. 1994); *Bowen v. Southtrust Bank*, 760 F.Supp. 889, 894 (M.D. Ala. 1991). The lodestar is determined initially by multiplying the number of hours counsel reasonably expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). An attorney's hourly rate should be based on the market rate that lawyers of similar ability and experience in the community charge for the types of services rendered. *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996).

As of August 16, 2011, Class Counsel had reasonably expended 130.15 hours on the case and will devote additional hours to the completion of this case. If the services of Class Counsel had been billed at the hourly rate, Class Counsel would be entitled to payment of at least $55,715 for its services. Class Counsel has provided the Court with detailed time records and a supporting affidavit, which are attached hereto. (See, Affidavit of Thomas A. Zimmerman, Jr. in Support of Class Counsel's Amended Petition for an Award of Attorney's Fees and Expenses).

Class Counsel has agreed to accept, and the Defendant has agreed to pay, an award of fees and costs in the amount of $35,000, which is less than Class Counsel's actual lodestar amount.

There is no reasonable basis to object to Class Counsel's award of fees, which are far below Class Counsel's lodestar, as requested herein.

## V. CONCLUSION

Accordingly, for the foregoing reasons, Class Counsel respectfully requests that the Court award Class Counsel attorneys' fees and costs in the agreed-upon amount of $35,000, and for any other relief the Court deems just under the circumstances.

Respectfully submitted,

  s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr. (#6231944)
Adam M. Tamburelli
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street
Suite 1220
Chicago, Illinois 60602
(312) 440-0020

Counsel for the Plaintiffs and Class

## **PROOF OF SERVICE**

  Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he filed the foregoing document upon all counsel of record, via the U.S. District Court's CM/ECF System, prior to 4:30 p.m. on August 26, 2011.

                <u>  s/ Thomas A. Zimmerman, Jr.  </u>